UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHNETTA ATKINS,

    Plaintiff,

v.                                                           CASE NO. 3:19-CV-142-J-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

## ORDER

This is an action for review of the administrative denial of disability insurance benefits (DIB) and supplemental security income (SSI). *See* 42 U.S.C. § 405(g). Plaintiff argues that the decision is not supported by substantial evidence because the Administrative Law Judge (ALJ) erred by rejecting her testimony about pain, by failing to provide good cause for rejecting the opinions of her treating neurosurgeon, and by failing to investigate the apparent conflict between the limitation to "simple tasks with little variation" and the DOT descriptions of the all three jobs the ALJ found Plaintiff could perform. After considering the parties' memoranda (docs. 17 and 18) and the administrative record (doc. 15), I remand for further proceedings consistent with this Order.[1]

    *A.*    *Background*

Plaintiff Johnette Rachelle Atkins, born on April 30, 1964, filed applications for period of disability, SSI and DIB on October 26, 2010, alleging disability beginning October 9, 2009. In a decision dated August 31, 2012, ALJ Gregory Froelich denied benefits and the Appeals Council

---

[1] The parties have consented to my jurisdiction (doc. 15). *See* 28 U.S.C. § 636(c).

denied Plaintiff's request for review (R. 58-68: 1-6). However, on July 14, 2015, the district court reversed and remanded the matter to the Commissioner and the Appeals Council directed the ALJ to re-evaluate Dr. Keller's opinions concerning Plaintiff's functional limitations (R. 860-873; R. 820-821). ALJ Froelich consolidated Plaintiff's newer claim for disability benefits with this one and conducted a new hearing on May 12, 2016 (R. 770-792). Plaintiff remained insured through December 31, 2014, thus she must establish disability on or before that date in order to be entitled to DIB or period of disability benefits (R. 796-797).

At the 2016 hearing before ALJ Froelich, Plaintiff testified she resides in a home with her twenty-one-year-old son. She earned a college degree in criminal justice, and has worked as an in-home daycare provider, a data entry clerk, an armored car driver, and a mail clerk (R. 786). Plaintiff alleges disability due to pain, fibromyalgia, depression, and difficult-to-control blood pressure (R. 773). She was diagnosed with fibromyalgia in 2015. Plaintiff also suffers from persistent pain in her low back and neck despite two spinal fusion surgeries, in 2010 and 2016 (R. 775). She has neck pain every day, and it causes headaches too. Her back pain shoots down her left hip, into her knee and foot (R. 776). In addition, Plaintiff deals with an array of side effects from the medications he takes to control her pain, depression and blood pressure. Specifically, she describes drowsiness, dry mouth, constipation, and sleep walking. She testified she can sit no more than ten to twenty minutes before she needs to stand up; stand no more than ten minutes; and walk for less than a block due to pain in her hip and knees (R. 778-779). She testified she can lift no more than ten pounds due to achiness in her shoulder, and drops things held in her left arm/hand due to nerve damage and loss of strength stemming from her neck (R. 780). She has trouble lifting and keeping her left arm above her shoulder too.

2

Following the hearing, ALJ Froelich found that Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, status post anterior cervical disc fusion (ACDF), cervical radiculopathy, fibromyalgia, and major depressive disorder (R. 799). In finding Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, the ALJ considered whether Plaintiff satisfied the criteria outlined in section 1.02 and 1.04 of Appendix 1 (R. 799). The ALJ also considered the severity of Plaintiff's mental impairment, finding Plaintiff did not satisfy the "paragraph B" criteria as she has only moderate limitations in her activities of daily living and social functioning and has not experienced any episodes of decompensation of extended duration. The ALJ also considered the paragraph C criteria, finding them unmet (R. 800). After carefully considering the entire record, ALJ Froelich found that Plaintiff retained the RFC to perform light work except that she requires a 30-minute sit/stand option, must avoid climbing ladders, ropes, or scaffolds, she can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch and crawl. She must avoid overhead reaching. She must avoid concentrated exposure to extremes of cold, vibration, moving mechanical parts, and unprotected heights. She is limited to simple tasks involving little variation that take a short period (defined as up to and including 30 days) to learn. She can relate adequately to supervisors but is limited to occasional interaction with coworkers and the general public. She is able to deal with changes in a routine work setting. (R. 800).

In his decision, ALJ Froelich found that, with this RFC, Plaintiff could perform her past relevant work as a mail clerk, DOT 209.687-026, light and unskilled (SVP 2) (R. 807). After consulting with a vocational expert (VE), the ALJ further found that Plaintiff can perform other jobs existing in the national economy, including Egg Candler, DOT 529.687-074, light and

unskilled (SVP 2) having 11,027 jobs nationally; and Marker II, DOT 920.687-126, light and unskilled (SVP 2) having 73,602 jobs nationally (R. 808-809).[2] In his decision, ALJ Froelich stated the VE's testimony is inconsistent with the information contained in the DOT, and explained "there is a reasonable explanation for the discrepancy" (R.809). He stated:

> The vocational expert testified that the DOT does not address overhead work or a sit/stand option. The vocational expert testified his opinion was based on thirty years of experience and knowledge of how the duties of these positions have changed over time and knowledge of how these jobs are performed in the regional and national economy. Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(R. 809). Plaintiff again appealed ALJ Froelich's decision to the Appeals Council (AC), but the AC found no reason under its rules to assume jurisdiction, finding the ALJ's decision supported by substantial evidence, and consistent with the applicable laws, regulations, and Social Security Rulings, and in compliance with the court remand (R. 702). Having exhausted her administrative remedies, Plaintiff filed this action.

---

[2] According to the DOT, an Egg Candler "inspects eggs to ascertain quality and fitness for consumption or incubation, according to prescribed standards: Observes eggs moving on conveyor over light, or holds eggs before shielded light or rolls them over lighted glass plate to render egg translucent. Observes shell color and texture, and internal characteristics, such as streaks, shadings, discolorations, size and position of yolk, and size of air cell. Places spoiled and substandard eggs in cases. Packs salable eggs in cartons or releases them on conveyor belt for packing by other workers. May break substandard eggs in container for further processing." DOT No. 529.687-074, 1991 WL 674753. According to the DOT, a Marker II "marks or affixes trademarks or other identifying information such as size, color, grade, or process code, on merchandise, material, or product, using one or more methods, such as metal punch and hammer, crayon, rubber stamp and ink, electric pencil, branding iron, acid and stencil, sand-grit and stencil, or tags. May inspect items before marking. May attach gummed labels to merchandise, material, or product, using tag dispensing machine. May clean items. May use printing mechanism or labeling press." DOT No. 920.687-126, 1991 WL 687992.

4

### B. *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C. Discussion

1. *Plaintiff's subjective complaints*

Plaintiff argues ALJ Froelich failed to provide sufficient justification for rejecting her testimony. She maintains the ALJ failed to support his bare conclusion that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other record evidence. She also asserts the ALJ failed to properly consider her fibromyalgia and headaches.

Although an ALJ must consider a claimant's complaints of pain, he "may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). If an ALJ elects not to credit the claimant's subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A reviewing court will not disturb an ALJ's clearly articulated credibility finding that is supported by substantial evidence in the record. *Foote*

6

*v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). In evaluating subjective complaints, an ALJ must use the "pain standard": 1) evidence of an underlying medical condition and either 2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or 3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer, supra*, 395 F.3d at 1210 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

Against this backdrop, in this case, the ALJ found at step two that Plaintiff's fibromyalgia is a severe impairment (R. 799).[3] The ALJ acknowledged his duties under the Eleventh Circuit's pain standard and in an attempt to satisfy the standard, stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" (R. 800). He discussed Plaintiff testimony about her widespread fibromyalgia pain, that Lortab and Lyrica provide some relief (but cause her to sleep), and that her pain has caused depression (R. 801). The ALJ summarized her complaints about side effects from medications, and her testimony that she is only able to sit for fifteen minutes, stand for ten minutes, walk for less than a block due to knee problems, and has difficulty with overhead reaching (R. 801). He acknowledged Plaintiff's limited range of motion in her neck, that she is most comfortable lying down, and sometimes forgets things. He also discussed that Plaintiff mostly keeps to her family but has two friends, that she has generally low energy, and that she drives to medical appointments or to visit with friends and family. The ALJ summarized Plaintiff's testimony about her limited daily activities, and her ability to self-care (R. 801). The ALJ referenced one function report from March 2014 where Plaintiff complained of debilitating pain

---

[3] The ALJ did not find that Plaintiff's headaches are a severe impairment. Interestingly, he had included "residual chronic headaches" among her severe impairments in his earlier decision. *See* R. 61.

to the point that on some days she cannot get out of bed. The ALJ noted that Plaintiff reported that bending, standing, sitting, walking, reaching, and temperature extremes exacerbate her pain; she drops things due to pain in her hands; she pays someone to do her hair do to difficulty lifting her arms overhead; she watches her grandchildren now and then; she does her laundry and light cleaning; and her daughter and mother did her shopping for her most of the time (R. 801-802). Following this one-page discussion, the ALJ opined that, "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision" (R. 802).

I agree with Plaintiff and find the ALJ's reasoning conclusory, as he has not identified any specific medical or opinion evidence supporting his determination that Plaintiff's testimony concerning the intensity, persistence and limiting effects of her impairments is "not entirely consistent" with her record. This lack of specificity runs contrary to Eleventh Circuit standards that require an ALJ to articulate specific reasons for his credibility determination. *Foote*, *supra*. As a result, this Court's ability to conduct a meaningful review in order to determine whether the ALJ's decision is supported by substantial evidence is hindered. Moreover, specific reasoning is particularly needed in a case where the claimant suffers from fibromyalgia. Fibromyalgia is "characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least [three] months." *Laurey v. Comm'r of Soc. Sec.*, 632 F.App'x 978, 987-88 (11th Cir. 2015) (quoting Social Security Ruling (SSR) 12-2p, 2012 WL 3107612 (July 25, 2012)). Because fibromyalgia "often lacks medical or laboratory signs and is generally

diagnosed mostly on an individual's described symptoms," its hallmark is "a lack of objective evidence." *Somogy v. Comm'r of Soc. Sec.*, 366 Fed. App'x 56, 63 (11th Cir. 2010) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)).

The Social Security Administration promulgated Social Security Ruling (SSR) 12-2p, to provide guidance on how the SSA develops evidence in a case where the claimant's fibromyalgia is a medically determinable impairment and how it will evaluate this impairment in a disability claim. SSR 12-2p instructs that subjective complaints are the "essential diagnostic tool" for fibromyalgia and that physical examination will usually yield normal results – a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. SSR 12-2p, 2012 WL 3104869 (July 25, 2012). The ruling directs ALJs to consider fibromyalgia in the five-step sequential evaluation process and instructs them on how to develop evidence and assess the impairment in determining if it is disabling. When making an RFC determination, SSR 12-2p states, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" *Id*. at *6. When determining whether a claimant can do any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to "be alert to the possibility that there may be exertion or nonexertional limitations, such as postural or environmental limitations, that may impact the analysis." *Id*. The ruling advises that "[i]f objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of the symptoms," the SSA will consider all of the record evidence, including the claimant's daily activities, medications, treatments, and statements by third parties about the claimant's symptoms. *Id.*

Thus, when evaluating the testimony and subjective complaints of a claimant who suffers from fibromyalgia, the ALJ must consider the record as a whole. Here, the ALJ did not dispute the Plaintiff's fibromyalgia diagnosis, and concluded it was a severe impairment. However, he found the Plaintiff's medically determinable impairments, including fibromyalgia, could reasonably be expected to produce the alleged symptoms but that her statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record (R. 802). The ALJ offered some analysis in his summarization of Plaintiff's treatment records: that many of the objective medical tests reveal little or no abnormalities; that Plaintiff reported progressive left shoulder pain and weakness (R. 803); that she had painful range of motion; and that she had only limited relief from injections, oral steroids, narcotic medication, and physical therapy (R. 803).[4] But this analysis is inadequate. The ALJ failed to sufficiently consider or discuss these hallmark symptoms of fibromyalgia (or the absence of them) when he evaluated Plaintiff's subjective complaints. *See e.g. Morgan v. Commissioner*, 2015 WL 1311062 (M.D. Fla. March 24, 2015) (remanding where ALJ failed to mention or follow SSR 12-2p's criteria concerning fibromyalgia). As in *Morgan*, I am unable to determine whether the ALJ's ultimate disability determination is supported by substantial evidence because he failed to consider Plaintiff's fibromyalgia according to the criterion set forth in SSR 12-2p. The ALJ also failed to discuss her headaches and medication side effects. Admittedly,

---

[4] The ALJ noted that Plaintiff was "noncompliant with physical therapy," but my review shows the reason for her physical therapy discharge on June 1, 2012 was "Patient's insurance has exhausted" (R. 803; 1498). Thereafter, in 2013, she missed some physical therapy appointments when her uncle was hospitalized and due to "too much pain to come in" (R. 1342). The assessment from the September 16, 2013 physical therapy note states, "Pt has been unable to make significant progress with her cervical pain and shoulder pain. She remained with marked tenderness with any palpation and could not tolerate any manual intervention and any active movements caused increased pain. Set goals not attained due to pain." (R. 1336).

Plaintiff was not diagnosed with fibromyalgia until 2014, and the medical treatment related specifically to fibromyalgia is sparse. However, even before this diagnosis, treatment records document complaints of body aches and pains treated conservatively with prescription medications.

## 2. Dr. Keller's neck limitations

I address Plaintiff's second challenge because it requires remand too. Specifically, Plaintiff challenges the ALJ's decision to assign little weight to treating neurosurgeon Gregory Keller's opinion that she can only occasionally move her neck while working and cannot hold her head in a static position.[5] Importantly, I note that when Plaintiff's case was before this Court in 2015, Magistrate Judge Patricia Barksdale found that ALJ Froelich had erred in evaluating Dr. Keller's opinions regarding Plaintiff's neck-related limitation. In her report and recommendation, later adopted by District Judge Henry Lee Adams, Jr., Magistrate Judge Barksdale noted that ALJ Froelich "gave significant weight to the opinions of Dr. Keller [ ] who had found that Atkins can only occasionally look down or up, turn her head left or right, and hold her head in a static position … He therefore should have incorporated those limitations or otherwise explained why he was not adopting them. He did neither … His failure to incorporate or otherwise address the neck limitations warrants remand" (R. 866-867). *See* Case no. 3:14-cv-0221-HLA-PDB (doc. 20, pp 7-8). Upon remand, when ALJ Froelich revisited Dr. Keller's opinions he found that Dr. Keller's head-turning limitations were only entitled to little weight. The ALJ explained that "claimant's reported activities do not support" the head-turning limitations (R. 807). In support, the ALJ stated only that, "She is able to drive to medical appointments and visit family and friends," did not need

---

[5] To be clear, Plaintiff does not challenge the ALJ's decision to assign little weight to Dr. Keller's other limitations; Plaintiff acknowledges that Dr. Keller later clarified that her cervical spine impairment would not prevent her from sitting, standing and walking for extended periods of time. *See* R. 1202; doc. 17, n 2.

11

an assistive device, and post-operative CT studies revealed her fusion was stable (R. 807). On appeal, Plaintiff again asks this Court to determine whether the ALJ's evaluation of Dr. Keller's head-turning limitations are properly supported by substantial evidence. I find that they are not.

While post-operative CT studies may confirm that Plaintiff's fusion is "stable," her daily activities and physician examinations consistently show that her head-turning capacity is limited. At the first administrative hearing on May 29, 2012, Plaintiff testified that she initially injured her neck in 2001, and reinjured it in 2009. She explained that she stopped working in 2009 because she "couldn't do anything … couldn't move" due to "continuously sharp pains just shooting down my back and my neck, and I was having problems with this left arm … swelling in my neck" (R. 995). Unfortunately, she did not experience much improvement after the first fusion surgery in 2010. Instead, she had constant headaches and pain with irritation and numbness and tingling into her hand and fingers (R. 996). She testified at the 2012 hearing that even after the second surgery she had not improved and continued to have the same problems (R. 996). She described that she has a limited range of motion of how far I can turn my neck" (R. 988). She rated her neck pain as an eight and a half, and her headache pain as a nine (R. 991). At the more recent administrative hearing (May 12, 2016) Plaintiff testified that despite having two cervical fusion surgeries, she still experiences neck pain on a daily basis (R. 776). She testified the neck pain causes headaches two to three times a week, lasting three to four hours each time (R. 776). She testified she was diagnosed with fibromyalgia in 2015 (although the records show diagnosis in 2014), and explained that she "probably had it all along … they had to refer me to the right person" (R. 774). The fibromyalgia causes aching body pain "like somebody stick[] you with a bunch of pins and then when you get the cold weather it is much worse" throughout her body, especially in her neck, lower back and hip (R. 774). Although the ALJ correctly noted she drives to doctor appointments

and to visit others, he omitted important details. Plaintiff testified at the first hearing that when she drives "from point A to point B [she is] seriously in pain." She explained that she tries not to drive and tries to get others to take her where she wants to go (R. 993). At the more recent hearing, Plaintiff testified she drives a car with a back-up camera so she does not need to turn around and look behind her and that she drives short distances no more than three to four times a week and only turns her neck once in a while in order to check her mirrors (R. 781-783).

Medical evidence documents that Plaintiff has neck pain and limited range of motion, and is consistent with Plaintiff's testimony in this regard. During the relevant time period, Plaintiff underwent two anterior cervical discectomy and fusion surgeries, both by Dr. Keller (R. 334-36, 534). Subsequent to her second surgery, Dr. Keller's January 12, 2012 and April 10, 2012, office notes indicate Plaintiff continued to experience significant pain in her neck that radiated to her left shoulder and arm (R. 531, 661). In 2012, Dr. Keller opined that Plaintiff has chronic pain in her neck and arms, and has limitation of motion in her neck secondary to pain (R. 509) Dr. Keller indicated Plaintiff has tenderness, muscle spasms, muscle weakness, and sensory loss (R. 510). Thereafter, orthopedists' records from other treating sources confirm that Plaintiff's neck and shoulder pain continued. *Se*e R. 660, 1388, 1650, 1662-1663, 1667-1669, 1675-1679). Examinations revealed discomfort upon turning her neck and "extraordinary" or "exquisite" tenderness in her neck, left shoulder, and left arm (R. 1569, 1651-1652, 1663). Records from the treating rheumatologist (Swati Shah), treating neurologist (Anika Goel), and psychiatrists (Shariq Refal and Benjamin Lye) document Plaintiff's continued neck pain too (R. 479, 665, 1198, 1535, 1569, 1583, 1588, 1616, 1640). In light of the record evidence consistently establishing Plaintiff's neck pain and limited ability to turn her head, I cannot conclude that the ALJ had good cause to assign only little weight to Dr. Keller's opinion on February 20, 2012, that she could only

occasionally bend her neck or hold it in a static position is supported by the evidence (R. 512). *See Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997) (substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise).[6] On remand, the ALJ should re-evaluate this opinion evidence.

### 3. *apparent conflict*

Plaintiff's third issue is that there is an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). Since remand is needed on the previous two issues I need not address this one, but because the law in this circuit recently changed I think it is necessary to discuss it. In *Washington v. Comm'r of Soc. Sec.*, the Eleventh Circuit held that a VE has an affirmative duty to (1) identify any apparent conflicts between a VE's testimony and the DOT, (2) ask the VE about the conflict, and (3) explain in the decision resolution of the conflict. *Washington*, 906 F.3d 1353, 1353-54 (11th Cir. 2018).[7] Per *Washington,* ALJs may no longer simply rely on a VE's statement that that his testimony does not conflict with the DOT. *Washington,* at 1361. Rather, the binding Eleventh Circuit law now is "that [Social Security Ruling] SSR 00-4p imposes an independent, affirmative obligation on the part of the ALJ to undertake a meaningful effort to uncover apparent conflicts, beyond merely asking the VE if there is one." *Id. a*t 1364.

---

[6] In *Lewis*, the Eleventh Circuit stated that "nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians." *Id*. at 1441.

[7] The *Washington* court defined the term "apparent" broadly:
> "[A]pparent" should be taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT. Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion. We take the word "apparent" to mean "seeming real or true, but not necessarily so."

*Id.* at 1366.

14

In this case, at the administrative hearing, the ALJ asked the VE:

> … to take an individual of the claimant's age, education and the past work as was indicated there, an individual limited to work at the light exertional level with a 30 minute sit/stand option, the occasional climbing of ramps and stairs, no climbing of ladders, rope and scaffolds. It would be occasional balance, stoop, kneel, crouch and crawl. No overhead reaching, no concentrated exposure to extremes of cold, vibrations, work around moving mechanical parts and work at unprotected heights. Now from a mental standpoint they would be limited to performing simple tasks with little variation. They take a short period of time to learn. That would be up to and including 30 days. Able to deal with changes in a routine work setting and socially able to deal adequately with supervisors but limited to occasional coworker and general public contact.

(R. 786). The VE responded that such an individual would be capable of performing Plaintiff's past work as a mail clerk, or alternatively, could perform the jobs of egg candler or marker II (R. 787, 790). When asked whether there were any conflicts between his testimony and the DOT, the VE addressed off task behaviors and the sit/stand option, but did not address any conflicts between his testimony and the DOT regarding the limitation to "simple tasks with little variation" (R. 788). Plaintiff posits this failure amounts to an error requiring remand because the DOT reasoning levels for all three jobs identified by the VE exceed Plaintiff's limitation to "simple tasks with little variation." According to the DOT, the mail clerk job requires a reasoning level of three and the egg candler and marker II jobs require a reasoning level of two. Reasoning level two require an employee to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." Reasoning level three requires an employee to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DOT, App'x C, 1991 WL 688702 (4th ed. rev'd 1991). Plaintiff asserts the ALJ had a duty to elicit a reasonable explanation for the apparent conflict between the VE and the DOT before relying on the VE's testimony and erred by failing to do so. I agree.

15

While the Eleventh Circuit has yet to address this specific issue, applying *Washington*, courts within the circuit have held that there is an apparent conflict when an ALJ's hypothetical question limits a claimant to simple work and the VE names jobs with reasoning levels of two or three.[8] *See generally Howard v. Comm'r of Soc. Sec.*, case no. 8:18-cv-2004-T-PDB, 2019 WL 4738137 (M.D. Fla. Sept. 27, 2019) (vacating and remanding where VE named two jobs with reasoning levels of two and one job with a reasoning level of three and finding apparent conflict between the ability to understand, remember, and carry out only simple instructions and reasoning levels two and three); *Salermo v. Saul,* case no. 8:18-cv-979-T-TGW, 2019 WL 4595157, at *3 (M.D. Fla. Sept. 19, 2019) (recognizing Eleventh Circuit's broad definition of term "apparent" in *Washington* and explaining "[t]he DOT states that, unlike reasoning level 1, reasoning level 2 requires the ability to carry out detailed instructions. That appears to be inconsistent with simple work."); *Saffioti v. Comm'r of Soc. Sec.*, case no. 2:17-cv-143-FtM-29CM, 2019 WL 1513354, at *3 (M.D. Fla. Apr. 9, 2019); *Langway v. Berryhill*, case no. 8:18-cv-549-T-30CPT, 2019 WL 918958, at *3-5 (M.D. Fla. Feb. 8, 2019) report and recommendation adopted, 2019 WL 913283 (Feb. 25, 2019) (remanding where ALJ did not address or resolve apparent conflict between jobs identified by VE that DOT describes as requiring reasoning levels of two or three … "it is unclear that an individual such as the Plaintiff who is restricted only to understanding, remembering, and carrying out simple instructions would be able to successfully perform such work"); *Borroto v.*

---

[8] To date, the Eleventh Circuit has not addressed this issue. Notably, in a recent *per curiam* decision, it stated "this Court has not yet decided in a published opinion whether a limitation to simple, routine repetitive work is inconsistent with a job that requires a general education development reasoning level of three." *See Wooten v. Comm'r of Soc. Sec.*, 2019 WL 5092898 (11th Cir. Oct. 11, 2019). In *Wooten*, the Eleventh Circuit decided it "need not resolve that question" because one of the three jobs identified by the ALJ was the job of final assembler with a reasoning level of one, the lowest level, which was consistent with the RFC, such that even if the ALJ had erred in identifying two jobs that required a reasoning level of three that apparently conflicted with the RFC, the error was a harmless one. *Wooten*, at *2.

16

*Comm'r of Soc. Sec.*, case no. 2:17-cv-673-FtM-99CM, 2019 WL 488327, at *9-10, report and recommendation adopted, 2019 WL 290599 (Jan. 23, 2019).  2019 WL 4595157, at *3.[9]

Although the Commissioner acknowledges that *Washington* imposes an affirmative duty on the ALJ to identify apparent conflicts and to resolve them, citing cases from other circuits and pre-*Washington* cases in this circuit, the Commissioner maintains that a fact-specific inquiry into whether the Plaintiff can perform the jobs identified is appropriate. I find these arguments unpersuasive.[10]

D. *Conclusion*

For the reasons stated above, it is ORDERED:

1. The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and

2. The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on December 16, 2019.

*[signature: Mark A. Pizzo]*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[9] While the wording in the RFC in *Salermo* was not identical to the limitation in the RFC in this case, at least one court has equated a limitation to "simple tasks with little variation" with a limitation to "routine, repetitive tasks". *See Brown v. Comm'r of Soc. Sec.*, case no. 6:17-cv-1399-Orl-18TBS, 2018 WL 4126529, at * (M.D. Fla. June 13, 2018), report and recommendation adopted, 2018 WL 4112833 (M.D. Fla Aug. 29, 2019).

[10] "An 'apparent conflict' is thus more than just a conflict that is made apparent by the express testimony of the VE.  It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony.  At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Washington*, at 1365.

17